First case is Malhan v. Secretary United States Department of State et al., number 18-3373. Good morning, Your Honors, and may it please the Court, Paul Clark. For the plaintiffs, Surrender Malhan, and also for the co-plaintiffs, his children are identified as E.M. and D.M. It is important that they are also plaintiffs in their case. I'd like to reserve five minutes for rebuttal, if I may. That would be great. Thank you. So, Your Honors, the facts in this case are almost too absurd to be believed, but yet they're well documented, and obviously on a motion to dismiss, the facts alleged in the complaint must be accepted as true. But in any event, in February 2011, Mr. Malhan's putative wife filed for a divorce, and she asked for and was granted sole 100% custody of the two children. She was also granted a slightly different proceeding, but a little bit later, she was granted $6,000 in spousal support and child support. Over the course of the next 16 months, Mr. Malhan spent countless hours, time, money, resources, to finally get his children back to try and contradict the allegations, the false allegations that had been made that the Court said he was entitled to. So in June of 2012, Mr. Malhan was given 50-50 custody. Now, that changed slightly in August because they went to school, and then in August, that was modified, and his children began to stay with Mr. Malhan four days out of every seven during the school year. How old are the children presently? The children, I believe, at the time of the complaint, they were seven and eight. I believe they're now nine and eleven. So there's still some time to go. But in any case, this case obviously has been pending for many years. This was eight years ago. So again, in August of 2012, Mr. Malhan became the parent who had 54% of the time with the children. Under any standard, he is a custodial parent or the custodial parent. And yet, every time he has attempted to have this situation looked at, he's been turned down. So at paragraph 152 of our complaint, for instance, which is on A50, it says Mr. Malhan was told that the policy of New Jersey is not to do a triennial review unless the person listed as the obligee requested it. And since Mr. Malhan was the obligor, no review would be conducted. Now, again, I'm sure your honors are aware, U.S. Code section 42, Title 42, section 666A, 10, provides specifically for review and adjustment of child support orders at least every three years and, quote, upon the request of either parent. So that relates to counts three and four, right? Well, yes. I mean, that would be part of the background, certainly, for the due process. But can I just ask you, count one, is that not being appealed? No. So count one is the federal aspect of it, which we've referred to passports. Right. So we haven't appealed that. Just frankly, we felt we needed to narrow on what was the more pressing issue. So we haven't appealed that part. What about four? All the rest of them we are appealing on, yes. But, again, I want to emphasize that, you know, this section is very important because it specifically provides, I'm referring to 42 U.S.C. 666A, 10. It specifically provides that this review is to be conducted upon the request of either parent. So not only is the state blatantly in violation of that, but the other point that must be emphasized here is that this makes a specific reference saying that parents have a right to request this triennial review. So this isn't just some vague thing the state should do this. It specifically provides for a right of both either parent to ask for a triennial review, which the state has refused for years to do. For how long can either parent request a review? Up until what point, when the children turn 18? Well, theoretically, there could be support even past 18. I mean, if they were in school or something, there could be. I've seen cases where there are. But, yes, but, I mean, again, under the statute, the federal statute, they could request a review at least every three years. If it's been three years or more since the last triennial review, as I read the statute, the state is required to provide it. And, again, this is a specific right. And I think this is, again, we think this is enforceable through 1983. But even aside from that, our primary relief, even whether we could get injunctive relief under 1983, our primary relief that we're really seeking is declaratory relief, declaratory judgment. We want a declaratory judgment that the state cannot decide that they're only going to provide a triennial review if the obligor, you know, only if the obligee requests, or the obligor. Either one can request it. That's the point. Why don't we jump into, because your time is short, of course. The district court felt that these claims were barred by both Rooker-Feldman doctrine and younger abstention. Maybe you could deal with that. Yes. So the younger first is simple. The younger, after the Sprint case, is limited to three. But it can't be too simple. Well, I mean, I think it's fairly because the Sprint case specifically limits it to three specific categories. None of those categories are present here. In fact, the state doesn't even, I just refer to the defendants as the state, doesn't say which of the three categories apply. And that's the Sprint communications case. Right. And it's specifically limited to those cases here. The other case involving the ‑‑ Before you move on, I mean, don't we need to distinguish among the different types of orders that are at issue in the state court? Aren't the garnishment orders uniquely in furtherance of the state court's ability to perform its judicial function? No, in fact, the garnishment orders didn't even come from the court. They came from the 4D agency. From the what? I'm sorry, maybe I'm confusing. There's a, I'm sorry, I'm talking about, I'm sorry, actually, the garnishment order did. The levy order. Can you slow down? Sorry. The levy orders didn't come from the court, but yes. I'm not asking about those. The garnishment order came from the court, but it was subsequently vacated by the court after the U.S. Department of Labor had sent a letter to the judge saying that they had looked at this and had determined that it was illegal under federal law because they had attempted to garnish 88 percent. And this is actually. So the garnishment order is not at issue anymore? Is that what you're telling us? Well, no, we would like we would like to get certainly at least declaratory relief that the garnishment order should not be done. But the garnishment order was vacated. Right. And this goes back to the Rooker issue. Yes. So you want to you want a prospective declaration not to reinstitute the garnishment order? Is that what you're saying? We want a declaratory judgment that, yes, the garnishment order is illegal. But you said it doesn't exist anymore. It was vacated. That doesn't mean it couldn't happen in the future. And again, because Mr. when I'm saying the levies and the garnishments, because Mr. Malhan's bank accounts have been levied repeatedly. And then there was also this garnishment thing that came up. Suddenly, sua sponte, the judge issued this garnishment order and then subsequently vacated it after it was pointed out to him by the Department of Labor, U.S. Department of Labor, that it was it was not valid under federal law. So, again, we do think prospectively we'd like to see an order this doesn't happen again because it did happen once. And we think he's in danger of this happening for a second time, again, given the history of the case. But they're trying to ask you about the Rooker. And I think that this the garnishment order goes directly to the Rooker because the district court ruled that we couldn't challenge the garnishment order because that was a violation of Rooker Feldman, even though the order had been vacated. So the point of the Rooker and there's a lot of case law on this applies to judgments. And we've seen again, we've quoted a number of cases, Judge Wolfson, Judge McNulty, both in the district courts have both addressed this recently. We have in our brief. The case law says very clearly it applies to judgments. It doesn't apply to anything or everything. But moreover, there's there's actually nothing here. So even on the law, Rooker Feldman wouldn't apply. Has the family court entered any final orders in your case? No, no, your honor. There's no final order. So that supports your point that it can't be Rooker Feldman because there's no. Right. There's no final judgment. In fact, Mr. Mellon is not the loser. First of all, you can't even be a loser until it's final, I suppose. I mean, that's what I think some of the cases talk about, like the McHale case. But you're also arguing that we don't even need to get to it. It seems like it is an issue whether it applies to final orders or just orders. You're saying we don't even have to get there. No, because there is no order. The court has, again, the last custody order was in August 2012. It provided Mr. Mellon to have 54 percent of custody and his putative wife to have 46 percent. So that's the order. We're not asking this court or the federal courts to change that order in any way, shape or form. Those are the court orders that are in effect. Mr. Mellon is not contesting any state court order in this case. But isn't this case resolved, quote, at least for the moment? And that's a language that's used a lot in the Port Authority case. And you're saying, well, things could happen in the future. We never know. I mean, this could go on. The kids are only 9 and 11. But for the moment, isn't this matter resolved by the state court? No, no, not remotely. Why not? Because Mr. Mellon is still being assessed $3,000. And I'm almost out of time. Mr. Mellon is still being assessed $3,000 a month in child support, despite the fact that for the last seven years, you know, he has been the parent of primary residents. And not only that, her income has increased substantially. When this was first put in, her income was considered to be zero. She now has a six figure income. Mr. Mellon, again, this is in all of our papers and in the complaint, Mr. Mellon's income has decreased. Her income has increased. He's now got 54%. And yet all this time, when he's paying, he's threatened with jail. And again, as you see in the complaint, he said he can't afford to pay this anymore. He's become delinquent on these supposed payments of $3,000 a month that he cannot pay. And he's faced with loss of passport, loss of license, jail, all of these things. His bank accounts have been levied repeatedly. He owes me $100,000. He's in debt up to his ears. And they're saying that he has to keep paying child support under the threat of going to jail. But all he's asking for is a basic tri-annual review by federal law. And he's gone to the state courts, too. He's asked to take court. They say no. He's gone to the state agency. They say no. They say tough luck. Tough it out. So this is not. Thank you. We'll get you on rebuttal. Thank you. Thank you. You may proceed. Good morning, your honors. And may it please the court. Deputy Attorney General Ragnar Jager on behalf of the state appellees. The court should affirm the district court's decision for two reasons. One, count 2, 5, and 6 were properly dismissed because under the Younger Abstention and or the Rooker-Feldman Doctrine, the district court lacked jurisdiction. Can I ask you a question? Not to throw you off, but he says all he's looking for is a tri-annual review. Why can't he get that? Your honor, he certainly can apply for a tri-annual review. He certainly can apply for a tri-annual review. It's up to the agencies to review and make a determination of whether or not it should recommend a modification to the state court, which then the state court would then review it and would determine whether or not a modification is necessary for whatever reasons under the guidelines. New Jersey has a comprehensive system already in place to address changed circumstances and the unique nature of child custody proceedings. I think your friend would say that didn't work so well for him. He didn't really get, I mean, all he was looking for was process, I guess. And that's exactly why the Younger Abstention Doctrine and the Rooker-Feldman Doctrine apply in this matter, because what he's essentially asking for is a disguised attempt to invalidate the family support and parental arrangements made by the state family court's judges who have the expertise in these state court domestic relationship matters. It's true, but he's also citing a federal statute. That is true, your honor, but under the Younger Abstention Doctrine, if he has adequate opportunity to raise any of these federal claims, which he does, the Younger Abstention Doctrine remains and continues to apply in that instance. But if the process is ongoing, as you say it is, doesn't that undercut your argument? No, your honor, it does not, because the Younger and or the Rooker-Feldman Doctrine can apply. As Judge Hardiman mentioned earlier, we have to sparse out the counts here, and we have to determine what's actively stated and accept the complaint as true. Just to address an earlier point, based on the timeline from the complaint, there have been at least six orders since 2011 regarding child support, at least six orders regarding spousal modification and at least two garnishment orders, which if the district court were to address count two, which requires that the district court determine that the appellant has custody and therefore not required to pay child support would be contrary to any one of those six or 12 actually modification orders that were already issued in state court. You cited all those orders, but has the family court entered any final orders in Malhan's case? Final orders into which proceeding, your honor? Any of them. Are there any final orders entered in the state court? The state would say that there are judgments that have been rendered and that it need not be final. However, there has not been an official divorce. Under Rooker-Feldman, it needs to be final. Well, final in the sense that the state court rendered a judgment. The appellate, there was an opportunity as of right to appeal. Whether or not the obligor appealed is their decision. If they would have appealed, they would have been heard by the appellate division. And if the obligor would then disagree with the appellate division, it would have gone up to the New Jersey Supreme Court. Which of those orders are final that he should have or could have appealed from? It would be the state's position that the last or any of the orders rendered. Which I'm asking for an order date. Tell me what day they were entered and what the orders say. As according to Paragraph 1, just one final order. Yes, your honor. In July 2017, according to Paragraph 181 of the verified complaint, after oral argument, the court denied custody modification motion filed last November, which is referencing a 2016 motion, and issued a garnishment order. Those are two specific. But how do we know that's a final order? They were not appealed to the appellate division. And they are binding. They continue to run throughout the child support proceedings until the child support matter is discharged. Well, that's my point. It's not discharged. It's ongoing, right? Yes. So the case is ongoing. By definition, it's not a final order. That is correct, your honor. Under the Younger abstention doctrine, this – Forget Younger. I'm trying to take Rooker-Feldman first. Okay. And we need a final order. But if the case is ongoing, it's not a final order. And even so, as I understood your brief, you're relying on our decision in Port Authority. Yes, your honor. But I wonder, why isn't Port Authority abrogated at least in part, if not entirely, by the Supreme Court's decision in the Saudi Basic case? Well, this court has continued to apply the Rooker-Feldman doctrine to child support proceedings, even after the ExxonMobil case. For example, in Nagy, in a 2017 unpublished opinion, this court – Any published opinions? An unpublished opinion. Did we do – have we done that in any precedential opinions? No, your honor. And at least three unpublished opinions, this court has determined that in child support proceedings, the Rooker-Feldman doctrine could apply in at least two garnishment orders, and in one where the source of the appellant's injury was the state court judgment. The Rooker-Feldman doctrine is not limited to the final judgment. It's the four-part test that's part of Rooker-Feldman. It's whether the federal plaintiff lost in state court before he filed his federal action. And that's straightforward here. There's 12 instances where the appellant tried to modify the support and parenting arrangements, and he lost. And it was before he filed his action. And the second and fourth part of the Rooker-Feldman doctrine require the court to determine – the district court to determine what is the exact source of the appellant's injury. In other words, is the plaintiff complaining of injuries caused by the state court judgments and is inviting the district court to review and reject the state court judgments. And again, your honors, in count two, in order for the district court to arrive at the relief that the appellant is requesting, it would require the district court to review and reject the parental arrangements and support arrangements made by the state family court in order to determine that he, quote-unquote, is the custodial parent and not required to pay child support, which is what the state court already ordered him to do, to pay child support. In count five, for example, the appellant is requesting that the district court credit him, Marinova, his wife, or soon-to-be ex-wife's debt to his child support arrears, which would directly overturn the state court's judgments that addressed spousal support credits in the past and which would also impact the pending motions for the credits before the state courts now. Well, just to stop you for a minute, you talked about the four-part test that was discussed in Exxon. We talked about it in our Great Western Mining case. One of the elements is that the plaintiff – to apply the doctrine is the plaintiff is a state court loser. Did he really – is there a judgment that said he did lose? Yes, Your Honor. If he applied to modify the child support and the relief he sought was rejected, then he lost in his motion that he was trying to modify the child support. If he applied to modify the spousal support, he lost six times. He is a state court loser. In Great Western, Your Honors, the Rooker-Feldman doctrine actually did not apply in that matter because the court determined that the source of the plaintiff's injury in that matter was the conspiracy that was alleged. So it wasn't an actual state court judgment, but it was a conspiracy between the defendants preventing the plaintiffs from advancing in child support. That is not the case here. What about count six, though? Count six, the garnishing order was vacated. He's not a loser on that one, right? So how would Rooker-Feldman apply to that? Your Honor, to the extent that that matter is not moot because the garnishment order was already vacated, then in essence what he's asking the court to do is before we arrived here today, he was asking the district court to in essence overturn a specific garnishment order, even though it was already vacated. And as Judge Hardiman mentioned earlier, now he's asking the court to issue a prospective relief, basically interjecting itself to the state court proceedings and directing the state court from ever allowing it to issue another garnishment order for the large amount of arrears that the appellant already owes today. Isn't the family court process a different animal, though, because it's always changing. Circumstances are changing. Spouses get different jobs at different income levels, and therefore, spousal and child support can be adjusted accordingly. So isn't this sort of a moving target, not final type of situation? And these facts, I think, illustrate that. Yes, Your Honor, and that's why the state advances the position that it's either the younger end or the Rooker-Feldman doctrine. Indeed, this court in Anthony V. Counsel concluded that the judicial proceedings concerning child support judgments and obligations are ongoing. The court explained that child support orders and the mechanisms for monitoring, enforcing, and modifying them comprise a unique system and continual operation, and they remain ongoing until the child support order is finally discharged. Because New Jersey has such a comprehensive and fluid system designed to address the ever-present, ever-changing realities of child support orders, for this court to intervene would constitute impermissible interference with pending state proceedings. Indeed, as mentioned earlier, New Jersey already has a comprehensive system designed to address the ever-changing issues, and that is why an obligor or an obligee can apply to the state court at any time for a modification due to changed circumstances, and based on the changed circumstances and the guidelines provided to the state courts, the state family courts can exercise their expertise to determine whether or not a modification is appropriate under those instances. Unless your honors have any questions. Let's talk about younger. As your adversary points out, you didn't cite, well, neither you nor the district court cited the Sprint Communications case, which sort of clarifies younger abstention. Did you take a look at that, and how does it apply here? Yes, your honor. The Sprint Communications decision does not affect the unique nature of the child support proceedings that are ongoing in this matter and that are because of the unique system of child support. In the Sprint Communications. Under Sprint Communications, the court gave us three specific areas where younger abstention would apply. Which of the three does this fit into? Yes, your honor. In at least one instance, the Eastern District of Pennsylvania, Judge Prater and McHale, applied the third category of the Sprint decision to the younger abstention document to arrive to the younger abstention application as established by this court. The court in that matter determined that civil proceedings uniquely in furtherance of the state court's ability to perform the judicial function was applicable. It determined that New Jersey has a deep, unwavering interest in protecting and advancing the best interest of the child. And once it got past that small hurdle, then it continued to apply the Anthony V. Counsel decision in determining that child support matters are ongoing until they're finally discharged. And this court in at least three instances since the Sprint Communication case has indicated that the younger abstention doctrine continues to apply while they are unpublished decisions between 2015 and 2017. They are at least persuasive and this court should continue to act in accordance with the ways acted in the past. I'm sorry, which which opinions say that child support orders are the younger applies to child support orders? In Butler V. Pecoraro, in 2017, this court held that federal courts should abstain from ongoing state child support proceedings in a matter where the plaintiff filed an action versus a family court judge and asked the court to determine he was not in contempt of an ordered issue than a child support proceeding. In Enrique Burrell, a 2015 unpublished decision, commonly known as the Trash for Cash case, same instance, the court noted that the younger abstention doctrine should apply into child support proceedings. Again, in Gromick v. Manenza, a 2015 unpublished decision, the court noted again that the younger abstention. You're citing a lot of NPOs. Shouldn't we try to clean this up in a presidential opinion? If you're if your honors would like to to issue a presidential decision today, then it is the state's position that the younger abstention doctrine should apply because of the unique nature of the of the child support proceedings. Excuse me. Why? I don't know. I guess I guess I see a difference between the child support proceedings and the garnishment. You know, and just to show my my cards, I mean, it seems like the garnishment does go to the machinery of the court, the working of the court, but I'm not so sure about child support orders. The child support orders are the underpinnings of the garnishment order. Without the child support order, there would be no need for the garnishment orders. The garnishment orders are in place. I mean, excuse me, your honor, the child support orders are necessary to protect the interest of the child. And that and the New Jersey's interest in protecting that that interest of the child. Well, that that you're sort of I think that argument undermines your point because it it runs for the benefit of the individual. It's not. For the benefit of the working of the court. And if it's for the benefit of the individual, then under the third prong of Sprint, younger absentia would not apply. Under that matter, it would contradict the very essence of younger, which is to prevent federal district courts from exercising appellate review jurisdiction over ongoing state family matters, which are directly and all encompassing of state New Jersey laws and regulations. If to apply it adversely and not indicate the younger abstention doctrine, it would contradict that the reason why younger came into play to begin with your honor. And therefore, this court should apply the younger abstention to this matter, because as the appellant readily admits, his state proceedings remain ongoing. And any decision by this court would directly implicate or contradict the state court judgments had already been rendered. But that would be rendered in the fact that it's ongoing is enough for younger abstention. No, your honor. It's that it has to be ongoing. There has to be an important state interest by the state, which in this case, it's clear that the state does have that interest and the appellant has to have adequate opportunity to raise the. His federal claims in state court, which he does have that opportunity to raise it in state court. If he so chooses the state, the appellant has not allowed the state proceeding to pursue to to play, play its course. He's his every chance he's taken is to prevent it from concluding and making it's in finalizing itself. And in essence of the divorce proceedings, unless your honors have any questions regarding the quick. Yes, your honor. If we disagree with your position, is it your view that we should decide the Third Circuit should decide whether the proceeding is ongoing or finished or whether we should remand to the district court to make that determination? The district court did determine, in its opinion, that the state proceedings were ongoing and based accepting that. If we tell the district court they were they were he was wrong. The question is, who should make that determination us or the district? Well, we do not need to go that far, your honor, because in the complaint itself, the appellant states that the proceedings are ongoing. So accepting the facts as true, then the district court relied on that complaint itself and cited to to various portions of the complaint for that reason. That's that's my time is up. Excuse me. I apologize, your honors. Thank you. Thank you. Your honor is a couple of things. So I noted that my adversary said it a couple of times that either parent can apply to the agency at one point. He repeatedly did that. And again, in paragraph 152, he specifically states Malin was told that it was the policy of New Jersey. This again, this is an allegation of the complaint that has to be accepted as true. This was what he was told by the state's 40 agency, that it was the policy of New Jersey not to do a triennial review unless the person listed as the obligee requested. So they're telling you they know that's wrong, but clearly didn't happen in Mr. Malin's case. And he was told that it doesn't happen. And in fact, it is again to say that he can come in at any time or every three years. He's repeatedly this is eight years later. He's repeatedly asked the state for the agency, which they acknowledge that the state can, in fact, decide to do this review. And then they say the processes they recommend to the state court. But clearly, the 40 agency has the power to do a triennial review. But they refuse to do it for Mr. Malin. And the reason given was, well, you are the obligor and we don't do triennial reviews for obligors. So, you know, that's pretty straightforward. I don't know if you need to address the younger and the Rooker any further. I think this court pointed out who exactly is going to conduct the triennial review that you're seeking. The 40 agency, the child support office of the Child Support Services. And then after that review is conducted, if you get the relief that you seek, then the state could appeal that. Well, I think what's the next step if there's a disappointed advocate in that form? Right. So my understanding of the way this works and, you know, is that either the either parent, if they're dissatisfied with the triennial review, could then ask a district or a district, but the family court to review it. So that would be the second step. I mean, they may say, you know, you're right. We've looked at all the finances and it's clear and there's no. All right. And I guess you would concede, would you not, that if you get the triennial review and you're disappointed, they don't modify it or they modify it only slightly when you take that appeal to the family court. You can't run to this court or to the federal district court and say, you know, we want an order telling the family court to reverse the order of the four agents. Probably not. And again, it would vary by specifics, but the short answer would be probably not. But again, that's not what we're asking this court to do. We're asking the federal. You're asking us to force the agency to do its job, basically. Is it that straightforward? Yes, or at very least to issue a declaratory opinion saying you need to do it even if it's the obligor. And again, we think we'd be entitled even to stronger relief under 1980. All right. But if the law doesn't provide for the obligor to trigger the triennial review, then we'd have to hold that the regulation is or their statute is unconstitutional or something, right? Well, it would be in violation of federal statute. I don't know if it would be unconstitutional. Yeah. Which? The child support enforcement. All right. So the CSEA is the substantive hook that you can hang your hat on to force the agency to do this. Yes, for the triennial review. Now, I'll also say we also have a broader due process claim and problem here, which is that, again, this has been going on. Mr. Malin, as they talk about, you know, orders and things, Mr. Malin has gotten repeated orders that his wife owes him money. Is there any evidence that you can cite that the CSEA was intended to address precisely this type of situation that your client is experienced with the agency? Well, again, I think the language of 42666A10A is quite clear because it says, again, upon the request of either parent, the state shall review and, if appropriate, adjust the order in accordance with the guidelines established pursuant to section 6678. So I think that's very clear. This is exactly the kind of circumstance that is foreseen by this and exactly what the state has refused to do. And again, if they keep trying to bring in the, you know, the state courts, there's a couple of different issues with the state court and the state 4D agency. But again, in terms of the 4D agency that is the defendant in this case, they just steadfastly refuse, despite what they say today about he can request it at any time. He's requested it repeatedly. He's never gotten it. And it's been all these years. There's still no trial, even scheduled. I want to make clear this is, I think it certainly can be inferred from the complaint. They suggest that somehow Mr. Malhan is delaying this. Mr. Malhan has no incentive whatsoever to delay this. They keep saying you pay, keep paying, keep paying, keep paying. He has no incentive to delay a final judgment. Do you need to have a private right of action under 654666 or 667? I would say this, Your Honor. I would say that the language of 66610A is specific enough so that section 1983 would apply. All right. So it's not a private right of action under 666810. It's 666810 gives you a substantive right that's enforceable through section 1983. Yes. And, of course, the Declaratory Judgment Act as well. All right. Thank you, counsel. Thank you, Your Honor. We'll take the case under advisement and thank counsel for their excellent argument.